**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **JOHN CLAYTON**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JOHN DOES and**<br>**UNITED STATES OF AMERICA**<br><br>**Defendants.** | ) | **Civil No. 4:25-cv-12370-MRG** |

**ORDER ON MOTIONS TO DISMISS [ECF Nos. 20 & 22]**

**GUZMAN, J.**

Plaintiff John Clayton ("Clayton") brings this three-count lawsuit against U.S. Food and Drug Administration ("FDA") investigators and the United States for alleged violation of the Fourth Amendment, invasion of privacy, and violation of the Massachusetts Civil Rights Act. Before the Court is Defendants John Does' Motion to Dismiss [ECF No. 20] and Defendant United States' Motion to Dismiss [ECF No. 22]. For the reasons set forth below, the motions to dismiss are **GRANTED** but Plaintiff shall be given limited discovery and leave to amend his Complaint [Compl., ECF. No. 1-3 at 13–24] in accordance with the directives of this Order.

## I. BACKGROUND

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court sets forth the following facts from Plaintiff's Complaint, taking as true all well-pleaded allegations and drawing all reasonable inferences in the Plaintiff's favor. Morales-Tañón v. P.R. Elec. Power Auth., 524 F.3d 15, 17 (1st Cir. 2008).

### A. Relevant Facts

Plaintiff John Clayton resides at a private residential property which includes a long private driveway into the woods with property boundaries terminating at the street pavement. [Compl. ¶ 9]. Plaintiff asserts that law enforcement officers "caused the installation of a pole camera, capturing months of activity at Plaintiff's residence, from [September 27, 2018] through [December 2, 2018]." [Id. ¶ 10]. During that time, Plaintiff was under active investigation by the FDA. [ECF. No. 29-3 at 2].[1] In the Complaint, Plaintiff acknowledges that the exact location of the pole camera is currently unknown but insinuates that the location is known by the prosecutors in the criminal investigation. [Compl. ¶ 12]. Although Plaintiff alleges that the pole camera recorded identities and movements of Plaintiff, his family members, and guests, it appears that he has not reviewed any actual footage from the camera due to prosecutors' delays in providing the video. [Id. ¶¶ 13, 15]. According to the Complaint, Defendants did not obtain a warrant for the pole camera surveillance. [Id. ¶ 13].

Plaintiff first learned of the pole camera on August 9, 2022. [Id. ¶ 11]. It was disclosed to Plaintiff through a Notice of Discovery in a related criminal matter. [Id.; Notice of Discovery, dated August 9, 2022, ECF No. 1-3 at 20; ECF No. 27 at 3]. Plaintiff alleges that the agency or individuals responsible for the pole camera were not identified. [Pl. Mot. for Expedited Disc.

---

[1] On a Rule 12(b)(6) motion, the court "can consider (a) implications from documents attached to or fairly incorporated into the complaint, (b) facts susceptible to judicial notice, and (c) concessions in plaintiff's response to the motion to dismiss." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55–56 (1st Cir. 2012) (quoting Arturet-Velez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n.2 (1st Cir. 2005) (internal quotations omitted)). Plaintiff attached discovery records from the criminal investigation as exhibits to his Complaint, he does not deny or otherwise controvert the Defendants' assertion that he was the subject of an FDA investigation, and he admits that he learned of the surveillance "via discovery in a related criminal matter." [ECF No. 27 at 3; Compl. ¶ 11].

at 19, ECF. No. 1-4]. However, the Notice of Discovery that revealed the pole camera's usage listed Special Agent Hughes as the officer involved, beneath the seal of the FDA. [ECF No. 1-3 at 22]. The Notice of Discovery also listed items including "Hughes Documents" such as "IE DVDS of pole camera" and "Clayton emails to OCI" which refers to the Office of Criminal Investigations within the FDA. [Id. at 20].

The Court pauses to take judicial notice of Clayton's other legal actions: first, a case in this Court, Clayton v. Roy, 4:24-cv-40020-MRG (D. Mass. Nov. 26, 2024); and second, the underlying criminal matter in state court: Commonwealth v. John Clayton, 2085CR00010 (Worcester Super. Ct., September 14, 2026). The Court takes judicial notice of the filings in these related matters because they are public records susceptible to judicial notice, the Plaintiff sufficiently refers to the underlying state proceeding in his Complaint, and the parties do not dispute the authenticity of either action. See Watterson v. Page, 987 F.2d 1, 3–4 (1st Cir. 1993) (citing caselaw); see also Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004) ("the jurisprudence of Rule 12(b)(6) permits courts to consider matters that are susceptible to judicial notice"); Boateng v. InterAmerican Univ., 210 F.3d 56, 60 (1st Cir. 2000) (a court "may look to matters of public record in deciding a Rule 12(b)(6) motion"). In Plaintiff's other federal case, in a motion for contempt, Plaintiff attached a search warrant and affidavit from Special Agent Derek Roy of the FDA that stated that the FDA is leading the criminal investigation of Mr. Clayton, dated June 17, 2019. [Clayton v. Roy, 4:24-cv-40020-MRG, ECF No. 4-1 at 5 (Feb. 1, 2024)]. Clayton also attached an email he sent to Agent Hughes on October 15, 2019 regarding return of his cell phone seized in a search pursuant to a warrant. [Id., ECF No. 4-1 at 41]. In the present action, Plaintiff brings Counts I and II against Defendant United States for invasion of privacy in violation of Mass. Gen. Laws. Ch. 214 § 1B and the violation of the

Massachusetts Civil Rights Act under Mass Gen. Laws. Ch. 12 §§ 11H and 11I. [Compl. ¶¶ 20–26]. Plaintiff brings Count III against all Defendants for violating the Fourth Amendment to the Constitution. [Id. ¶¶ 27–28]. Plaintiff alleges that he suffered emotional duress, humiliation, loss of privacy, and other damages. [Id. ¶ 26].

### B. Procedural History

Plaintiff filed his Complaint on August 27, 2025. [ECF No. 1]. The individual Defendants were initially named as John Does, collectively. Defendants filed a Notice of Substitution to substitute the United States of America for individual federal Defendants Derek Roy and William Hughes with respect to Counts I and II of Plaintiff's Complaint. [Defs.' Notice of Substitution at 1, ECF. No. 17]. Plaintiff then filed a Motion for Limited Opposition to Westfall Substitution. [Pl. Ltd. Opposition to Westfall Substitution, ECF. No. 18]. Subsequently, Defendants' Notice of Substitution was granted. [ECF. No. 17-2 at 2]. Plaintiff's claims for invasion of privacy and violation of the Massachusetts Civil Rights Act asserted against Defendants Roy and Hughes were dismissed with prejudice. [Id.] The United States was substituted as the sole defendant on these claims. [Id.] Thereafter, Defendants John Does and Defendant United States filed separate motions to dismiss for failure to state a claim upon which relief can be granted. [ECF Nos. 20 & 22]. Plaintiff opposed. [ECF Nos. 26–29].

## II. LEGAL STANDARDS

### A. Motion to Dismiss

As a preliminary matter, Plaintiff proceeds *pro se* in this action. Accordingly, the Court must "liberally construe[]" the Complaint and hold it to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). While the Court must construe *pro se* complaints liberally

and may only dismiss the action if Mr. Clayton "cannot prove any set of facts entitling him" to relief, "pro se status does not insulate a party from complying with procedural and substantive law." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). If the Complaint, even construed in Plaintiff's favor, contains substantive issues that render it defective, dismissal is warranted.

Dismissal under Rule 12(b)(6) is appropriate "if, after accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of a plaintiff, the court determines that [the complaint] 'fails to state a claim upon which relief can be granted.'" Doe v. Williston Northampton Sch., 766 F. Supp. 2d 310, 311 (D. Mass. 2011) (quoting Edes v. Verizon Commc'ns, Inc., 417 F.3d 133, 137 (1st Cir. 2005); FED. R. CIV. P. 12(b)(6)). To survive a motion to dismiss, a plaintiff must "state a claim . . . that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (internal citations omitted). Despite this generous standard, "Rule 12(b)(6) is not entirely a toothless tiger . . . . The threshold for stating a claim may be low, but it is real." Dartmouth Rev. v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989) (quotation omitted). The complaint must therefore "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988); see DM Rsch., Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) (explaining that the complaint must "allege a factual predicate concrete enough to warrant further proceedings.").

## III. DISCUSSION

**A. Claims Against the United States: Invasion of Privacy and Violation of the Massachusetts Civil Rights Act**

Plaintiff's claims against Defendant United States are barred by the Federal Tort Claims Act ("FTCA") statute of limitations. Pursuant to the FTCA, a claimant must present their claim in writing to the appropriate federal agency within two years of the date the claim accrues. 28 U.S.C. § 2401(b). Additionally, an action for money damages arising from a federal employee's negligent or wrongful act or omissions within the scope of employment may not be instituted until the claimant has presented the claim to the appropriate federal agency and the agency has denied it in writing. 28 U.S.C. § 2675. If the agency does not finally dispose of the claim within six months after it is filed, the claimant may thereafter deem that inaction as a final denial. Id. A claim is presented when a federal agency receives either an executed Standard Form 95 or other written notification of the incident. 28 C.F.R. § 14.2.

Plaintiff failed to satisfy the statute's notice of claim requirement in a timely fashion. Plaintiff's claim accrued on August 9, 2022 when he was made aware of the pole camera surveillance through the Notice of Discovery. [ECF No. 1-3 at 20]. Plaintiff's argument that tolling of the statute of limitations was delayed by a lack of official documentation is without merit. [Pl. Opp. to Def. U.S. Mot. to Dismiss ¶ 12, ECF. No. 29]. Plaintiff contends he could not identify the agency and individual responsible until years after he was aware of the surveillance. [See id.] However, the Notice of Discovery, which Plaintiff concedes first alerted him to the pole camera surveillance, [Compl. ¶ 11], clearly bore the FDA seal and expressly identified Special Agent Hughes. [See ECF No. 1-3 at 22] Further, as discussed above, in Plaintiff's other federal case, he attached a 2019 email he sent directly to Agent Hughes

regarding seizure of his cell phone in the FDA's criminal investigation against him. [Clayton v. Roy, 4:24-cv-40020-MRG, ECF No. 4-1 at 41 (Feb. 1, 2024)]. Given that Plaintiff was already fully informed of an active, ongoing FDA investigation against him, this documentation provided more than sufficient context. [Compl. ¶ 11, ECF. No. 1-4]. Taken together, these facts demonstrate that Plaintiff knew, or reasonably should have known, the identity of the appropriate agency and parties since 2022. Plaintiff filed his SF-95 on January 26, 2026. Plaintiff did not provide other administrative notice of his claim. Thus, Plaintiff's SF-95 filing was well-beyond the two-year statute of limitations. See 28 U.S.C. § 2401(b). Plaintiff's FTCA claim accrued at least when Plaintiff received notice of the surveillance in August 2022, rendering the current action, filed in August 2025, time-barred. Accordingly, Plaintiff's claims against Defendant United States are hereby **DISMISSED.**

### B. Fourth Amendment Claim Against All Defendants

Plaintiff's Complaint lacks sufficient allegations concerning the location of the pole camera and whether it was on public or private property. As discussed below, the placement of the camera has great meaning in a Fourth Amendment analysis and Plaintiff's reasonable expectations of privacy. However, the Court acknowledges that the information that Plaintiff would need to sufficiently state a claim rests in the sole possession of the Defendants. Accordingly, the motion to dismiss shall be granted with leave to amend following a brief period of limited discovery, as detailed below.

The threshold question in assessing long-term surveillance under the Fourth Amendment is whether the government's conduct intrudes upon a subjective expectation of privacy that society is prepared to recognize as objectively reasonable. See Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). First Circuit law establishes that the

physical location of a recording device has great import on how far Fourth Amendment protection extends. In United States v. Bucci, the First Circuit held that a criminal defendant possessed no objectively reasonable expectation of privacy in the front driveway and garage of his home, which were continuously recorded by a law enforcement video camera mounted on a utility pole for a period of eight months. 582 F.3d 108, 116–17 (1st Cir. 2009). The court reasoned that these areas were entirely exposed to public view from a lawful vantage point, and that unenhanced technology that records what an ordinary passerby could visually observe does not constitute a Fourth Amendment search. See id.; see Kyllo v. United States, 533 U.S. 27, 31–33 (2001) (noting lawfulness of unenhanced visual surveillance of a home).

The First Circuit revisited the issue en banc in United States v. Moore-Bush, 36 F.4th 320 (1st Cir. 2022) (en banc). There, the en banc court split evenly on whether a prolonged, eight-month-long pole camera surveillance of a suspect's home violated the Fourth Amendment. Id. at 321, 361. An evenly divided en banc court lacks the authority to overrule existing circuit precedent. See TWA v. Hardison, 432 U.S. 63, 73 n.8 (1977). Consequently, Bucci remains binding, as no majority en banc holding overrules or narrows it. See 582 F.3d at 116–17; Moore-Bush, 36 F.4th at 321. Thus, under current First Circuit law, the use of a pole camera for prolonged observation of areas exposed to the public remains constitutionally permissible. Critically, Bucci relied on the premise that the surveillance device was located from a vantage point equivalent to what any member of the public could see. See 582 F.3d at 116–17.

In this case, Plaintiff alleges that the utility pole closest to his house is on his property at the end of his driveway, [Compl. ¶ 9], but he also asserts that he does not know the location of the pole camera and has never seen the footage, [id. ¶ 12]. Without specific factual allegations

identifying where the pole with the surveillance camera was located, whether Plaintiff possessed a legitimate expectation of privacy cannot be determined. If the camera was positioned on a public utility pole and recorded only an unenhanced view of Plaintiff's residence from a lawful vantage point, Plaintiff may fail to state a claim under the precedent of Bucci. See 582 F.3d at 116–17. Conversely, a fundamentally different constitutional analysis applies if the pole was situated on Plaintiff's private property or within a fenced area. See id. at 116–17 (finding no reasonable expectation of privacy where a camera was mounted on a public utility pole across the street and the home's exterior lacked fences or barriers to obstruct public view).

In his opposition to the individual Defendant's motion to dismiss, Plaintiff asserts that he does not yet know key facts such as "[t]he exact location of the camera"; "[w]ho installed it"; "[w]hether any warrants exist"; and, "[h]ow long it recorded." [ECF No. 27 ¶ 18]. These are indeed critical questions for this case. Plaintiff also asserts that these facts are exclusively within Defendant's control and seeks discovery before the Court forecloses his claim. [Id.]

If, on a motion to dismiss, a court finds that certain allegations are lacking, but much of the information needed to properly support a claim "is within Defendant[s'] possession and control, 'modest discovery may provide the missing link'" and "the district court has discretion to allow limited discovery and, if justified, a final amendment of the complaint." Lexington Ins. Co. v. Johnson Controls Fire Prot. Ltd. P'ship, 347 F. Supp. 3d 61, 64 n.1 (D. Mass. 2018) (quoting Menard v. CSX Transp., Inc., 698 F.3d 40, 45 (1st Cir. 2012)). Here, the Court finds that Plaintiff's inconsistent allegations concerning the location of the pole camera are insufficient to state a claim and therefore, the motion to dismiss is **GRANTED without prejudice**. The Federal Rules of Civil Procedure provide that courts "should freely give leave"

to amend a pleading "when justice so requires." FED. R. CIV. P. 15(a)(2). A district court has "significant latitude in deciding whether to grant leave to amend." Saari v. Allegro Microsys., LLC, 590 F. Supp. 3d 425, 435 (D. Mass. 2022).

The Court grants Plaintiff a period of limited discovery confined to the following questions: "[t]he exact location of the camera;" "[w]ho installed it;' "[w]hether any warrants exist;" "[h]ow long it recorded," and who/what entity owns the utility pole on which the camera is placed. [ECF No. 27 ¶ 18]. Defendants must comply with responding to these inquiries within thirty (30) days of this Order. Further, Plaintiff is hereby granted leave to amend the Complaint to allege specific, further facts regarding the precise physical location and ownership of the pole upon which the surveillance camera was mounted. Plaintiff's amended complaint must be filed within forty-five (45) days of this Order. Failure to do so may result in dismissal.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS with prejudice** Defendant United States' Motion to Dismiss, [ECF No. 22], with respect to Counts I and II. As for Count III, the Court **GRANTS without prejudice** the motions to dismiss, [ECF Nos. 20 & 22], and gives Plaintiff leave to amend his Complaint regarding Count III according to the terms in the preceding paragraph.

**SO ORDERED.**

Dated: September 30, 2026

/s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge